# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| ALANA SOUZA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CHARMED LLC, d/b/a Flirts Gentlemen's Club, <br><br> Defendant. | No. C22-2019-LTS-KEM <br><br> **MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

This case is before me on a motion (Doc. 27) for partial summary judgment filed by Plaintiffs Alana Souza, Dessie Mitcheson, Emily Sears, Jamillette Gaxiola, Jesse Golden, Jessica Hinton, Julianne Klaren, Katrina Van Derham, Lina Posada, Megan Daniels, Melanie Iglesias, Rosa Acosta, Rosie Roff, Sandra Valencia, Tiffany Toth Gray and Ursula Mayes (Plaintiffs). In support, Plaintiffs filed a brief (Doc. 27-1), a statement of material facts (Doc. 27-2) and an appendix (Doc. 27-3). Defendant Charmed LLC, doing business as Flirts Gentlemen's Club (Flirts), filed a resistance (Doc. 28) and a supporting brief (Doc. 28-1).[1] Plaintiffs filed a reply (Doc. 29). Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

On May 3, 2022, Plaintiffs commenced this action by filing a complaint (Doc. 1) against Flirts, which operates an establishment in Waterloo, Iowa. Plaintiffs assert eight

---

[1] In some filings, the name of the club is referred to as "Flirt's" rather than "Flirts." Based on various materials included in Plaintiffs' appendix (Doc. 27-3), it appears that "Flirts" is correct. As such, and except when this order includes a direct quotation to the contrary, I will refer to the establishment as "Flirts."

claims: violations of the Lanham Act (Count I); violation of Plaintiffs' common law right of publicity (Count II); violation of Plaintiffs' common law right of privacy – appropriation (Count III); violation of Plaintiffs' common law right of privacy – false light (Count IV); conversion (Count V); unfair competition (Count VI); negligence (Count VII); and unjust enrichment (Count VIII). *See* Doc. 1 at 14-30.

Plaintiffs seek actual, consequential and incidental damages; the amount due, owing and unpaid to Plaintiffs as representing the fair market value of compensation for what they otherwise would have received for use of their images and likenesses; treble and statutory damages; prejudgment interest; disgorgement of profits; a permanent injunction barring Flirts from using Plaintiffs images, costs and attorney's fees. *Id.* at 30-31. In its answer (Doc. 7), Flirts denied many of the allegations set forth in the complaint and asserted three affirmative defenses: (1) failure to state a claim upon which relief can be granted, (2) the doctrines of fair use, nominative fair use and/or descriptive use and (3) innocent infringement. Doc. 7 at 11.

Plaintiffs seek summary judgment on Count II, which alleges a violation of the common law right to publicity, and Count III, which alleges a violation of the common law right to privacy by appropriation. Doc. 27 at 1. Plaintiffs also request summary judgment on Flirts' affirmative defenses of fair use, nominative fair use, descriptive use and innocent infringement. *Id.*

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. RELEVANT FACTS

Plaintiffs filed a statement of material facts (Doc. 27-2) setting forth the alleged facts they rely on to seek summary judgment as to Counts II and III. Flirts did not file a response to Plaintiffs' statement of material facts, nor did it file a statement of additional material facts. *See* Docs. 28, 28-1. Therefore, pursuant to Local Rule 56(b), all facts set forth in Plaintiffs' statement of material facts are deemed admitted for purposes of their motion for summary judgment. *See* LR 56(b) ("The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact."). Those facts are summarized below.

In October 2016, Flirts uploaded a post to its online Facebook page. Doc. 27-3 at 54. The post included a photo of plaintiff Jesse Golden, a professional model, who was depicted in the post as promoting a "Halloween costume party" at the club. *Id.* at 53. In addition to this post, Flirts utilized images of each of the other fifteen plaintiffs, also professional models, in various marketing posts to its Facebook page without their consent. Docs. 27-2 at 2, ¶¶ 5-9. Specifically, Plaintiffs identify numerous Facebook and other online posts by Flirts utilizing their images. *Id.* at 2, ¶ 7.

None of the Plaintiffs worked for Flirts and none were paid by Flirts for its use of their likenesses and images. *Id.* at 2, ¶ 8. Each Plaintiff received "unwanted fame and

4

reco[g]nition in the strip club industry from unauthorized use of her image by strip clubs." *Id*. at 1, ¶ 3. Flirts' posts of Plaintiffs' images without their consent diminishes the "complete control" Plaintiffs exercise over their work, for which they receive "significant compensation for use" of their images. *Id*. at 2, ¶ 4.

Flirts' "ads appropriated each Plaintiffs' commercialized beautiful and attractive likeness." *Id*. at 2, ¶ 6. In light of the nature of the advertising for a "Gentlemen's Club where exotic dancers perform live and partially nude for customers," Plaintiffs "would not have agreed to appear in a Flirts ad, [and] each would charge a license fee for use of her image." *Id*. at 2, ¶¶ 9, 10. Flirts utilized Plaintiffs' images to promote its business without seeking Plaintiffs' consent, attempting to get a license or paying Plaintiffs for use of their images. Doc. 27-2 at 3-4, ¶¶ 18-20. Flirts took Plaintiffs' advertising ideas and passed them off as Flirts' own in order to promote its business. *See, e.g.*, Doc. 27-3 at 54, ¶ 25.

Mirzet Dizdarevic, Flirts' manager responsible for marketing during the time alleged, testified that he procured the images of Plaintiffs for free by using generalized Google search terms, such as "free sexy girl images for a flyer." Docs. 27-3 at 190-91, 28-1 at 4. After obtaining the images from Google, Dizdarevic used an app to design a flyer before posting it to Flirts' Facebook page. Doc. 27-3 at 190. Dizdarevic also testified that in addition to Flirts' posts on Facebook, Instagram and its own website, some of the flyers were also printed into hard copy. *Id*. at 192.

## V.  ANALYSIS

### A. *Common Law Rights of Publicity and Privacy by Appropriation*

Plaintiffs argue that they are entitled to partial summary judgment on Count II, which alleges a violation of the common law right to publicity, and Count III, which alleges a violation of the common law right to privacy by appropriation. They assert that Flirts appropriated their likenesses, including their commercial value, "by publishing advertisements on social media that used each Plaintiff's picture to commercially promote

5

[Flirts'] strip club and increase attendance." Doc. 27-1 at 9. Plaintiffs argue that there is no evidence that Flirts' use of their images were "incidental" to its commercial purpose but rather these images were used "precisely because of their sex appeal and value of [the] same to a business like a strip club." *Id*. Thus, they assert that there are no genuine issues of material fact precluding summary judgment on these claims. *Id*.

Flirts makes four arguments in support of its contention that there are genuine disputes of material fact concerning Counts II and III. First, Plaintiffs' names do not appear in the advertisements. Doc. 28-1 at 4. Second, the advertisements do not contain statements indicating that Plaintiffs will be performing at Flirts. *Id*. Third, there are no statements in the advertisements indicating that the individuals who appear in them endorse Flirts. *Id*. Fourth, the images of Plaintiffs were obtained for free through an online web search. *Id*.

I will address Count III, violation of the common law right to privacy by appropriation, first.

### 1. *Right of Privacy – Appropriation*

The Iowa Supreme Court has long recognized the right of privacy as characterized by the Restatement (Second) of Torts. *See Winegard v. Larsen*, 260 N.W.2d 816, 818 (Iowa 1977) (citing *Bremmer v. Journal Tribune Pub. Co.*, 76 N.W.2d 762, 822 (Iowa 1956)); *Stessman v. American Black Hawk Broad. Co.*, 416 N.W.2d 685, 686 (Iowa 1987). Within this right of privacy, the Court has identified four types of invasions: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light. *Koeppel v. Speirs*, 808 N.W.2d 177, 181 (Iowa 2011) (citing Restatement (Second) of Torts § 625A(2) (1977)).

The Court has addressed the three other subsections of the invasion of privacy tort, but it has not decided a case involving the category of appropriation. *See Estate of Bisignano v. Exile Brewing Co.*, No. 22-cv-00121, 2023 WL 7167889, at *11-12 (S.D.

6

Iowa Sept. 26, 2023); *see also Winegard*, 260 N.W.2d at 822-23 (addressing the standards for each category of invasion of privacy claims under the Restatement except the category of appropriation finding it "plainly inapplicable"). Although the Iowa Supreme Court has not addressed an appropriation claim, this court has concluded that the Iowa Supreme Court would nonetheless recognize its validity. *See, e.g., Griner v. King*, 568 F. Supp. 3d 978, 995-96 (N.D. Iowa 2021) (Williams, J.) (applying the Restatement analysis to plaintiffs' claim of invasion of privacy by appropriation); *Sharp-Richardson v. Boyds Collection, Ltd.*, No. C 96-0344, 1999 WL 33656875, at *14 (N.D. Iowa Sept. 30, 1999) (finding Plaintiff's invasion of privacy by appropriation claim to be without merit).

In *Griner*, a case in which a candidate for public office used a photograph of an individual in a political advertisement without consent, Judge Williams described the "appropriation" category of the invasion of privacy tort as follows:

> The Restatement of Torts elaborates on the "appropriation" form of "invasion of privacy." Section 652A of the Restatement of Torts states that the "right of privacy is invaded by. . . (b) appropriation of the other's name or likeness, as stated in § 652C." RESTATEMENT (SECOND) OF TORTS § 652A (AM. L. INST. 1977). Section 652C in turn states that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Id.* at [§] 652C. The common form of this invasion is the appropriation and use of a plaintiff's name or likeness to advertise a defendant's business or product, or for some "similar commercial purpose." *Id.* [§] 652C, cmt. b.
>
> . . . The tort applies only when the name or likeness is published to appropriate "to the defendant's benefit the commercial or other values associated with the name or the likeness[.]" *Id.* at § 652C cmt. d. It does not apply to an "incidental use" of a plaintiff's name or likeness, such as a "mere mention" of his name or likeness, a reference to the plaintiff's name or likeness while legitimately discussing "his public activities," or a publication of his name or likeness for a purpose "other than taking advantage of the reputation, prestige, or other values associated with him." *Id.*

7

*Griner*, 568 F. Supp. 3d at 996. Judge Williams concluded that the plaintiffs had sufficiently alleged a claim of appropriation to withstand a motion to dismiss. *Id.* at 997. Here, of course, the issue is whether Plaintiffs have established an invasion of privacy by appropriation as a matter of law.

Liability under § 625C of the Restatement requires an appropriation of a plaintiff's name or likeness, but it is not appropriation "when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity." Restatement (Second) of Torts § 625C, cmt. d. "The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness." *Id.* Here, Plaintiffs cite two cases from the District of Arizona to support their argument that Flirts "appropriated each Plaintiff's likeness, including the commercial value of their sexy professional modeling Image. . . to commercially promote Defendant's strip club and increase attendance." Doc. 27-1 at 9 (citing *Gray v. LG&M Holdings, Inc.*, No. CV-18-02543, 2020 WL 6200165, at *4 (D. Ariz. Sept. 23, 2020); *Longoria v. Kodiak Concepts, LLC*, 527 F. Supp. 3d 1085, 1099 (D. Ariz. 2021)). In both *Gray* and *Longoria*, the court granted the plaintiffs' motions for summary judgment, finding no issues of material fact under the same fact pattern present in this case. *See Gray*, 2020 WL 6200165, at *4; *Longoria*, 527 F. Supp. 3d at 1099. The District of Arizona reached the same conclusion in *Skinner v. Tuscan Inc.*, No. CV-18-00319, 2020 WL 5946898, at *1 n.1, *5 (D. Ariz. Oct. 7, 2020) (collecting cases).

However, in two other cases from the District of Arizona, the court denied plaintiffs' motions for summary judgment on appropriation claims under the same fact patterns. *See Geiger v. Creative Impact, Inc.*, No. CV-18-01443, 2020 WL 3545560, at *8 (D. Ariz. June 30, 2020) ("Plaintiffs have not shown that the undisputed facts establish a prima facie case for appropriation."); *Sampedro v. ODR Mgmt. Grp. LLC*, No. CV-

18-04811, 2021 WL 2144811, at *2 (D. Ariz. May 26, 2021) (denying Plaintiffs' motion for summary judgment).[2] These differing outcomes require closer examination.

In *Gray* and *Longoria*, professional models sued a strip club operator and alleged, among other claims, invasion of privacy by appropriation and violations of the right to publicity. *Gray*, 2020 WL 6200165, at *1; *Longoria*, 527 F. Supp. 3d at 1093. In *Gray*, the court applied a four-factor test to determine whether the plaintiffs established a claim of misappropriation. The factors required that they demonstrate "(1) the defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to the defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Gray*, 2020 WL 6200165, at *3 (citing *Pooley v. National Hole-in One Ass'n*, 89 F. Supp. 2d 1108, 1110 (D. Ariz. 2000) (relying on the Restatement (Second) of Torts § 625C and the Restatement (Third) of Unfair Competition § 46)). The court found that the defendant was advantaged, regardless of the omissions of the plaintiffs' names from the advertisements, and that it was "beyond controversy" that it "sought to use Plaintiffs' images to sell its strip club." *Gray*, 2020 WL 6200165, at *4. The court concluded that the plaintiffs had demonstrated an absence of genuine issues of material fact and were entitled to summary judgment. *Id.* Similarly, in *Longoria*, the court found that the plaintiffs were entitled to summary judgment because the defendant "brought forth no evidence suggesting Plaintiff's images were publicly available to Defendant for licensing and use." *Longoria*, 527 F. Supp. 3d at 1099 (internal quotations omitted) (citing *Gray*, 2020 WL 6200165, at *4).

By contrast, in *Geiger* and *Sampedro*, the court considered the same factual pattern but held that the plaintiffs in those cases were not entitled to summary judgment. In *Geiger*, the court found three ways in which the plaintiffs had not met their burden. First, they did not establish "beyond controversy" that they were "reasonably identifiable from

---

[2] The five District of Arizona decisions cited herein were decided by five different United States District Judges.

the photograph or other depiction[s];" rather, "[w]hether the defendant's use of a plaintiff's image identifies the plaintiff is a question of fact" that "must be made by the trier of fact." *Geiger*, 2020 WL 3545560, at *8. This determination included analyzing the "nature and extent of identifying characteristics used by the defendant, the defendant's intent, the fame of the plaintiff, evidence of actual identification made by third persons, and surveys or other evidence indicating perceptions," for the trier of fact. *Id.*

Second, the court found that the plaintiffs could not establish damages on summary judgment, as the factors for damages must be established by weighing the intent of the parties "and a party's intent must typically be determined by the finder of fact." *Id.* Third, the court found that when the defendant did not seek the express consent of the plaintiffs for use of their images, but obtained the images for free online, that "the question of apparent consent must be determined by the finder of fact." *Id.* at *5, *9 (citing Restatement (Second) of Torts § 892). Ultimately, the court found "triable issues of fact as to the elements of Plaintiffs' appropriation claims." *Id.* at * 9.

In *Sampedro*, the court similarly found triable issues of fact and denied the plaintiffs' motion for summary judgment on their appropriation claims. *Sampedro*, 2021 WL 2144811, at *2. The court found that it was not "beyond controversy" that the defendants' use of the plaintiffs' images identified the plaintiffs and that the question of appropriation on that issue must be made by the trier of fact. *Id.*

Here, Flirts articulates two lines of argument that create a genuine dispute of material fact when construing the evidence in the light most favorable to Flirts. First, it points out that none of the images "name the individual," "state that the plaintiffs will be performing or appearing at Flirt's Gentlemen's Club," nor "state that the plaintiff is endorsing Flirt's." Doc. 28-1 at 4. As held in *Geiger* and *Sampedro*, "whether the defendant's use of the plaintiff's image identifies the plaintiff is a question of fact." *Sampedro*, 2021 WL 2144811, at *2. While Plaintiffs' consumer survey analysis (Doc. 27-3 at 241-42) found that "a majority of respondents" believed Plaintiffs were associated, affiliated or agreed to sponsor Flirts, the study found that "in most cases, no

10

more than one-quarter of the respondents across the four cells said they recognized the women in the ads, while at least two-thirds of all respondents across the four groups said they did not recognize any of the models in the Flirts Gentlemen's Club ad they saw." Doc. 27-3 at 243. I find that there is a genuine dispute of material fact as to whether the use of the Plaintiffs' images resulted in the identification of the Plaintiffs. This question is reserved for the trier of fact.

Second, Flirts argues the photos in the advertisements "are readily available on the internet when a Google search is performed." Doc. 28-1 at 4. Dizdarevic's testimony demonstrates that this is how he obtained Plaintiffs' images in this case. Doc. 27-3 at 190. Plaintiffs do not dispute that this is how the images were obtained, but argue that it "simply makes no difference" because "nowhere does Defendant claim running a Google search and using the results creates a license to commercially use a photograph." Doc. 29 at 3. However, as the court in *Geiger* explained, even though the Plaintiffs did not provide express consent for Flirts' use of their images, the issue of whether there was apparent consent is a question of fact that must be determined by the trier of fact. *Geiger*, 2020 WL 3545560, at *9 (citing Restatement (Second) of Torts § 892).

Because there are triable issues of fact, Plaintiffs' motion for summary judgment on their invasion of privacy by appropriation claim (Count III) will be denied.

### 2. Right to Publicity

The Iowa Supreme Court has not specifically recognized the common law tort of right to publicity. *See Sharp-Richardson*, 1999 WL 33656875, at *15 (noting Iowa has not recognized the "right to publicity"); *Estate of Bisignano*, 2023 WL 7167889, at *12 (finding "the Iowa Supreme Court would recognize the right of publicity if presented with the question"). However, this court has previously concluded that the Iowa Supreme Court would allow a right to publicity claim to proceed. *Sharp-Richardson*, 1999 WL 33656875, at *15 (citing *Anderson v. Low Rent Housing Comm'n*, 304 N.W.2d 239, 249 (Iowa 1981)); *see also Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 730 (8th Cir. 1995)

11

(finding Minnesota would recognize the tort of violation of publicity rights even though it does not recognize the "fourfold tort of invasion of privacy").

In *Estate of Bisignano*, 2023 WL 7167889, at *12, the Southern District of Iowa addressed the viability of a right of publicity claim in Iowa. In that case, Judge Locher explained that the right of publicity is recognized by the Restatement (Third) of Unfair Competition, which the Iowa Supreme Court has favorably cited in previous decisions. *See id.* (citing *Cmty. State Bank, Nat'l Ass'n v. Cmty. State Bank*, 758 N.W.2d 520, 525-27 (Iowa 2008) (relying on the Restatement to assess a trademark infringement claim); *Cemen Tech, Inc. v. Three D Industries, L.L.C.*, 753 N.W.2d 1, 7 (Iowa 2008) (relying on the Restatement to assess a claim of misappropriation of trade secrets); *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 761 (Iowa 1999) (relying on the Restatement to assess the enforceability of an employment agreement containing a non-disclosure provision). The right of publicity, found in § 46 of the Restatement, is the historical descendent of the right of privacy. *See* Restatement (Third) of Unfair competition, § 46 cmt. b (Am. L. Inst. 1995). Judge Locher found that right of publicity claims are viable under Iowa common law because "the right of publicity is a species of the right to privacy, which the Iowa Supreme Court has protected for nearly seventy years." *Estate of Bisignano*, 2023 WL 7167889, at *13 (citing *Bremmer*, 76 N.W.2d at 764). I agree, and predict that the Iowa Supreme Court would recognize the common law tort of the right to publicity.

As for the elements of that tort, the parties suggest that the claims of invasion of privacy by appropriation and the right of publicity effectively share the same elements. *See* Docs. 27-1 at 7, 28 at 2, ¶ 3. However, the distinction between these torts may not be incidental. In *Ventura*, while addressing Minnesota law, the Eighth Circuit Court of Appeals noted that "the right of publicity differs substantially from the right to privacy." *Ventura*, 65 F.3d at 730 (8th Cir. 1995). The court stated that the "policy underlying the tort of invasion of privacy is the protection of the privacy and solicitude of private person[s] from the mental distress that accompanies undesired publicity." *Id.* at 730. By

contrast, the right to publicity "protects the ability of public person[s] to control the types of publicity they receive," and "protects the pecuniary, not emotional, interests." *Id*. The Restatement itself recognizes "[t]he distinction between the publicity and privacy actions." Restatement (Third) of Unfair Competition § 46, cmt. b.

"An action based on the right of publicity is a state-law claim." *C.B.C. Distrib. Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 822 (8th Cir. 2007) (citing *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 566 (1977)). Although Iowa has not specifically recognized the elements of such claim, this court has found that a plaintiff must establish the following: "(1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant." *Sharp-Richardson*, 1999 WL 33656875, at *15 (denying defendants' motion for summary judgment on plaintiffs' right to publicity claim). Relying on the Restatement of Unfair Competition, the Supreme Court of Missouri held "[i]n a right of publicity action, the plaintiff must prove the same elements as in a misappropriation suit, with the minor exception that the plaintiff must prove that the defendant used the name to obtain a *commercial* advantage." *Doe v. TCI Cablevision*, 110 S.W.3d 363, 369 (Mo. 2003) (en banc), *cert. denied*, 540 U.S. 1106 (2004); *see also C.B.C. Distrib. Mktg.*, 505 F.3d at 822 (favorably citing Missouri's interpretation of the Restatement and summarizing the elements as: (1) "defendant used plaintiff's name as a symbol of his identity, (2) without consent (3) and with the intent to obtain a commercial advantage").

Here, viewing the record in the light most favorable to Flirts, and for the same reasons that apply to Count III, there are issues of material fact as to Plaintiffs' right to publicity claim. Among other things, there is a genuine issue as to whether Flirts' use of the Plaintiffs' images resulted in the identification of the Plaintiffs and as to whether apparent consent was given. Plaintiffs' motion for summary judgment as to their claims under the right to publicity (Count II) will be denied.

## B. Affirmative Defenses

Plaintiffs seek summary judgment on Flirts' affirmative defenses of (1) fair use, nominative fair use and/or descriptive fair use and (2) innocent infringement. Doc. 27 at 1. Plaintiffs assert these are not affirmative defenses to any of Plaintiffs' claims and, in any event, are not supported by the record. *Id.* In response, Flirts has elected to withdraw the first set of affirmative defenses (fair use, nominative fair use and/or descriptive use). Doc. 28 at 3. As such, those defenses are no longer at issue.

Flirts resists Plaintiffs' motion for summary judgment on the affirmative defense of innocent infringement. *Id.* It asserts that such a defense "may apply to the issues of damages." *Id.* A court must act with caution in granting summary judgment. *Anderson*, 477 U.S. at 255. Generally, a court addresses affirmative defenses only after finding that the plaintiff established the required element of the relevant claim. *Jacobsen v. Rensink*, No. C96-4074, 1998 WL 35240791, at *5 (N.D. Iowa July 7, 1998) (reaching defendant's affirmative defense only after finding that plaintiff "established the two required elements of his claim"); *Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138, 1146 (W.D. Mo. 2010) (reaching defendant's affirmative defenses only after finding plaintiff and copyright owner "established a claim for copyright infringement").

Because there are issues of material fact precluding summary judgment for the Plaintiffs as to Counts II and III, I decline to reach Plaintiffs' arguments for summary judgment as to Flirts' affirmative defense of innocent infringement. *See Griner v. King*, No. 21-CV-4024, 2022 WL 4281600, at *7-8 (N.D. Iowa Sept. 15, 2022) (distinguishing *Spann v. Lombardi*, 960 F.3d 1085, 1088 (8th Cir. 2020) and *CRST Expedited, Inc. v. JB Hunt Transp., Inc.*, No. 17-CV-26, 2018 WL 2768874, at *8 (N.D. Iowa June 8, 2018)); *see also Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, No. 4:08-CV-243, 2008 WL 2817106, at *6 (E.D. Mo. July 21, 2008) (declining to grant Plaintiff's motion to strike innocent infringement affirmative defense in trademark infringement, Lanham Act and unfair competition claim finding the defense "relevant to the question

of whether there is a likelihood of confusion between the marks"). Plaintiffs' motion for summary judgment on this issue will therefore be denied.

## VI. CONCLUSION

For the reasons set forth herein:

1. Plaintiffs' motion (Doc. 27) for partial summary judgment is **denied** in its entirety.

2. Defendants' affirmative defenses of fair use, nominative fair use and descriptive fair use (Doc. 7) are hereby deemed to be **withdrawn**.

**IT IS SO ORDERED.**

**DATED** this 6th day of February, 2024.

_____
Leonard T. Strand, Chief Judge